IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD R. PETERSON, as Chapter 7 Trustee for Lancelot Investors Fund, Ltd. and Colossus Capital Fund, Ltd., <br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>WINSTON & STRAWN, LLP,<br><br>　　　　Defendant. | Case No. 11 C 2601 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ronald R. Peterson, the Chapter 7 Trustee for the bankruptcy estates of Lancelot Investors Fund, Ltd., and Colossus Capital Fund, Ltd., brings this action against the law firm Winston & Strawn, LLP, alleging legal malpractice based on the firm's representation of the two funds. Winston & Strawn has moved to dismiss all of Peterson's claims. For the reasons stated below, the Court grants the motion.

### Background

The Court draws the following facts from Peterson's second amended complaint and accepts them as true for purposes of the motion to dismiss. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

Lancelot and Colossus (the Funds) are two hedge funds. Greg Bell managed their investments through two investment management companies. Bell owned and

operated the management companies. He decided where to invest the Funds' assets and worked to attract new investors for the Funds.

Bell invested most heavily in purchase-order finance notes issued by entities controlled by Thomas Petters. These entities ostensibly sold their goods to wholesale retailers like Sam's Club and Costco. The Funds' loans were secured by the accounts receivable and physical inventories of the entities. In reality, however, there were no physical inventories—all the purchase orders were fakes. Petters had in fact been operating a massive Ponzi scheme, using the Funds' assets to pay off other debts while keeping a portion for himself. Like most Ponzi-scheme investors, the Funds initially received returns on their investments, taken mostly from later investors. In September 2008, however, Petters's scheme unraveled, and the Funds crumbled.

Peterson contends that both Bell and the Funds were ignorant of Petters's fraudulent operation until at least October 2007. Between October and December 2007, however, Bell grew suspicious when Petters failed to make timely payments to the Funds. Eventually Bell discovered the scheme. In April 2008, Bell joined in the fraud, working with Petters to conduct a series of transactions that made the Funds appear to investors to be operating legitimately.

In December 2003, the Funds put out a Confidential Information Memorandum (CIM), detailing the nature of their investments. The CIM described various restrictions on Bell (through the investment management companies). These restrictions allowed him to invest only in entities that had a pre-existing binding agreement with a retailer to sell inventory and required him to make investment decisions based on the character of the inventory and the entity's ability to provide sufficient collateral. In addition, the CIM

2

required "an affiliate of the Fund or Investment Manager . . . [to confirm] the delivery of the Underlying Goods and the payment of the Retailer" to the entity. 2d Am. Compl. ¶ 29(f). Finally, the CIM required the Fund to "have a 'lock-box' arrangement with the [entity,] pursuant to which the Fund will have control over [its] bank account in which the Retailer will pay the purchase price for the Underlying Goods." *Id.* ¶ 29(g). Bell failed to follow these restrictions. Peterson does not allege in his complaint that any other employee of the Funds attempted to procure any such lock-box arrangements.

In August 2005, Bell retained Winston & Strawn to represent the Funds and Bell's investment management companies. Specifically, as alleged in the complaint, Winston & Strawn agreed to represent Bell's investment management companies "and all privately offered investment funds whose investments were managed by [them]." *Id.* ¶ 10. Peterson alleges that immediately after retaining Winston & Strawn, Bell told the firm that the Funds were not satisfying the criteria laid out in the 2003 CIM. He stated that Petters would not allow him to verify the inventory and that the Funds did not have any lock-box arrangements with any of Petters's businesses. Bell told Winston & Strawn, however, that he trusted Petters, and he continued to invest the Funds' assets in his businesses.

In March 2006, the Funds issued an amended CIM, which Winston & Strawn drafted. It contained the same investment restrictions as the prior versions and additionally created a new position of "Loan Acquisition Officer," whose job was to review and evaluate proposed loan investments recommended by Bell. Peterson's complaint does not disclose the identity of the officer or what, if any, role he or she played in assessing Bell's investment recommendations. *See id.* ¶ 16. Bell continued

to invest the Funds' assets in Petters's businesses without complying with the restrictions. The Funds continued to operate without any lock-box operation in place until the FBI exposed Petters's Ponzi scheme in September 2008 and the Funds collapsed.

Peterson contends that as Bell became increasingly suspicious of Petters in late 2007, he approached Winston & Strawn with questions regarding his deferred compensation from the Funds (earned through the investment management companies), and how he could protect his personal assets off-shore. In January 2008, Bell retained Winston & Strawn to represent him in a personal capacity, in addition to the firm's engagements as counsel for the Funds and the investment management companies.

Peterson has sued Winston & Strawn for legal malpractice. Illinois law governs. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 15 (2000) ("The basic federal rule in bankruptcy is that state law governs the substance of claims."). The complaint includes two claims, in each of which Peterson alleges that the firm breached its duties of disclosure and due care throughout its representation of the Funds from August 2005 through September 2008. 2d Am. Compl. ¶ 13 (dividing the claim into two counts based on the timing of Bell's actions). Peterson contends that when Bell told Winston & Strawn he was not complying with the investment restrictions in the 2003 CIM, the firm failed to meet its legal obligation to disclose those facts to an "unconflicted representative" of the Funds and to exercise due care in addressing the investment management companies' "legal obligation to comply with the Funds' investment restrictions." *Id.* ¶ 32–33. Peterson also alleges that the law firm was negligent in

drafting the 2006 CIM, which he contends created the "false impression" for its readers that Bell was complying with the investment restrictions. *Id.* ¶ 35. Finally, Peterson alleges that in early 2008, when Bell expressed concern about Petters and sought individual representation, the law firm again failed to meet its legal obligations to disclose and to address potential harm to the Funds.

Winston & Strawn has moved to dismiss Peterson's complaint on three grounds: (1) the defense of *in pari delicto* bars Peterson's claims; (2) his complaint fails to state a claim upon which relief can be granted; and (3) Peterson's first claim is barred by the two-year statute of limitations applicable to legal malpractice claims.

## Discussion

The phrase *in pari delicto* comes from a longer Latin phrase: "*In pari delicto potior est condition defendentis,*" or where the wrong of both parties is equal, the defendant's position is stronger. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). The defense of *in pari delicto* is an equitable one, prohibiting a plaintiff from maintaining a claim where he bears equal fault for his alleged injury. *Knauer v. Jonathon Roberts Fin. Grp., Inc.*, 348 F.3d 230, 233 (7th Cir. 2003); *see also Vine St. Clinic v. Healthlink, Inc.*, 222 Ill. 2d 276, 297, 856 N.E.2d 422, 436 (2006) ("[T]he law will not aid either party to an illegal act, but will leave them without remedy as against each other, with the caveat that they are of equal knowledge, willfulness and wrongful intent, or *in pari delicto.*") (internal quotation marks omitted). Because the defense of *in pari delicto* is an affirmative defense, a plaintiff is not required to plead around it, *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003), but dismissal under

5

Rule 12(b)(6) may be proper if the face of the complaint establishes the requirements of the defense. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

Winston & Strawn contends that Peterson's claims for malpractice are premised on the law firm's actions or inactions vis-à-vis the Funds after obtaining information from Bell. It argues that Bell's conduct and knowledge are imputed to the Funds. Because Peterson stands in Funds' shoes, Winston & Strawn contends, his claim is barred by the defense of *in pari delicto*. Peterson argues that under Illinois law, an agent's knowledge and conduct are not imputed to his principal when the agent acts outside the scope of his authority, which Peterson contends Bell did by acting in a manner contrary to the CIMs.

The Court first considers the issue of imputation. This is not the first time the question of Bell's relationship to the Funds has been addressed in litigation in this district and circuit. In April 2012, the Seventh Circuit decided *Peterson v. McGladrey*, 676 F.3d 594 (7th Cir. 2012). In that case, Peterson, who as trustee represented the Funds who are parties here and Bell's two investment management companies, sued the group's auditor for professional negligence based on its failure to discover Petters's fraud. *Id.* at 596. The district court granted the auditor's motion to dismiss, finding that the doctrine of *in pari delicto* barred Peterson's claim. *Id.* The Seventh Circuit reversed. It ruled that because Peterson's complaint did not allege Bell knew about the fraud until February 2008, the Trustee could maintain a negligence claim against the auditor for the period prior to February 2008. The Seventh Circuit determined Bell's knowledge was imputed to the Funds and thus barred Peterson's claim:

> The Funds knew what Bell knew, for he was the head of their
> management company and investment adviser. So if Bell was in on

6

> Petters's scam, then the Funds have no claim against McGladrey for
> failing to detect and warn the Funds about something that Bell, *and thus
> the Funds*, already understood.

*Id.* (emphasis added).

Peterson contends that these statements are mere dictum. The Court disagrees. The first quoted sentence states a conclusion regarding the imputation of knowledge from Bell to the Funds, and the second quoted sentence says that based on the court's determination regarding imputation, the Funds (and thus Peterson) could not maintain a claim against the auditor. The finding of imputation thus appears to be a necessary part of the court's analysis. Although the court ultimately determined that, according to allegations in the complaint, Bell did not possess the requisite knowledge, it would not have had to reach that question had it determined that there was no imputation of knowledge in the first place.

That aside, this Court concludes that Bell's conduct and knowledge are appropriately imputed to the Funds. "One fundamental rule of agency law is that corporations 'know' what their employees know—at least, what employees know about subjects that are within the scope of their duties." *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 378 (7th Cir. 2010) (applying Indiana law); *see also Van Hulle v. State Farm Mut. Auto. Ins. Co.*, 44 Ill. 2d 227, 231, 254 N.E.2d 457, 460 (1969) ("[T]he liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal.").

Illinois courts consider whether the agent's purported conduct was done for the benefit of the corporation or at its expense. *Holland v. Arthur Anderson & Co.*, 127 Ill. App. 3d 854, 864, 469 N.E.2d 419, 425 (1984); *see also Cenco Inc. v. Seidman &*

7

*Seidman*, 686 F.2d 449, 456 (7th Cir. 1982) (noting that the alleged misconduct was committed by a corporation's top management, making imputation appropriate). The exception to the general rule sensibly applies when the agent's interests become adverse to the principal. *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 589, 909 N.E.2d 310, 331 (2009).

The Seventh Circuit in *McGladrey*, however, expressly rejected Peterson's argument that Bell's interests were adverse to the Funds. *McGladrey*, 676 F.3d at 599 ("Bell was not stealing from the Funds, whether or not he was using them to snooker people who had money to invest.") (citing *Cenco*, 686 F.2d at 454). Bell owned and operated the investment management companies that invested and managed all of the Funds' assets. Although Peterson contends that at some point a loan acquisition officer was hired, his complaint does not say who the officer was and does not describe how the officer performed his or her duties vis-à-vis Bell. Rather, every interaction between the Funds and any other entity (including Winston & Strawn) that is described in the complaint took place through Bell. Additionally, Peterson holds Bell responsible for failing to adhere to the CIM's requirement that the Funds have a lock-box arrangement with the business entity. 2d Am. Compl. ¶ 29(g). Peterson says that the arrangement's purpose was to "protect the Fund[s]" yet contends that Bell was the person responsible for complying with the arrangement. Based on the complaint's allegations, the Court concludes that with regard to the matters in question, Bell was acting on behalf of the Funds within the scope of his duties. Thus his knowledge and conduct are, under Illinois law, imputed to the Funds.

As trustee, Peterson stepped into the shoes of the Funds. As a result, his claims are subject to the same defenses that Winston & Strawn would have against the Funds. *McGladrey*, 676 F.3d at 596; *see also Bank of Marin v. England*, 385 U.S. 99, 101 (1966) ("[T]he trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition."). Because the Court has concluded that the Funds knew and did what Bell knew and did, the only question remaining is whether the Funds, through Bell, were "as culpable as the defendant, if not more so," such that the Court should let the losses rest where they fell. *McGladrey*, 676 F.3d at 596; *see also McRaith*, 391 Ill. App. 3d at 595, 909 N.E.2d at 336 ("*In pari delicto* is intended for situations in which the victim is a participant in the misconduct giving rise to his claim.").

In *McGladrey*, the court held that, accepting as true the allegations in Peterson's complaint, there was some period of time in which neither Bell nor the Funds knew of the facts that the auditor was negligent in failing to discover. *McGladrey*, 676 F.3d at 596. In the present case, however, Peterson's claims against Winston & Strawn rest entirely on facts that the firm only learned through Bell's disclosures. Specifically, Peterson contends that Winston & Strawn breached its duties of disclosure and due care in failing to notify and advise the Funds regarding Bell's stated failure to comply with the investment restrictions in the CIMs. As indicated above, Bell's actions are imputed to the Funds. Thus the Funds cannot sue Winston & Strawn for failing to advise them of facts that they already knew through Bell.

Peterson argues that the defense of *in pari delicto* should not apply if the plaintiff has acted negligently rather than fraudulently. In describing the defense, however, the

9

Illinois Supreme Court stated broadly that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *King v. First Capital Financial Services Corp.*, 215 Ill.2d 1, 34, 828 N.E.2d 1155, 1174 (2005). It did not limit the defense to cases in which the plaintiff has committed intentional misconduct.

Peterson has not alleged that Winston & Strawn's actions were anything more than negligent, and he expressly admits that Bell's actions were negligent. 2d Am. Compl. ¶ 35. Peterson, standing in the shoes of the Funds, is thus equal in culpability to Winston & Strawn and therefore, the Court finds that *in pari delicto* bars Peterson's claims and "leave[s] them without a remedy as against each other." *Vine St.*, 222 Ill. 2d at 297, 856 N.E.2d at 436 (citing *Rees v. Schmits*, 164 Ill. App. 250, 258 (1911)).

Because the Court finds the doctrine of *in pari delicto* defeats Peterson's claims, it need not address Winston & Strawn's remaining arguments for dismissal.

**Conclusion**

For the reasons stated above, the Court grants Winston & Strawn's motion to dismiss [docket no. 37] and directs the Clerk to enter judgment in favor of the defendant and against the plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 10, 2012